UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

BRYAN CHRISTOPHER BROWN,

        Plaintiff,         Case No. 1:15-cv-1091

v.         Honorable Janet T. Neff

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections, Washington, and O'Neal. The Court also will dismiss Plaintiff's due process and illegal search claims against Defendant Hawkins. The Court will serve the remainder of the complaint against Defendant Hawkins.

**Discussion**

I.  Factual allegations

Plaintiff Bryan Christopher Brown presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Michigan Reformatory (RMI). However, the actions about which Plaintiff complains occurred at the Earnest C. Brooks Correctional Facility (LRF). Plaintiff sues the MDOC, MDOC Director Heidi Washington, LRF Sergeant (unknown) O'Neal, and LRF Correctional Officer (unknown) Hawkins.

Plaintiff alleges that, on September 10, 2015 at about 6:00 a.m., Defendant O'Neal came to Plaintiff's cell, got him out of bed, and told him to cuff up, because he was leaving. Plaintiff contends that O'Neal violated MDOC policy, by not allowing him to pack and secure his property before the transfer to RMI. Plaintiff asserts that the violation of property deprived him of his right to due process and equal protection under the Fifth and Fourteenth Amendments.

Plaintiff also alleges that the MDOC and LRF were deliberately indifferent to the effect of a transfer on Plaintiff's mental health, knowing that a change of routine could throw him into a severe depression. When he arrived at RMI, Plaintiff had thrown up and was unaware of his surroundings. An officer asked him if he was alright, and Plaintiff stated that he was not. Plaintiff was then placed in a "suicide strip cell" for five days. (Compl., ECF No. 1, PageID.6.)

Plaintiff did not receive his property until September 17, 2015, a week after his transfer. In addition, he only received one of two duffle bags of his property. Plaintiff alleges that Defendant Hawkins violated the First Amendment by opening Plaintiff's outgoing mail addressed to the Department of Civil Services, which Plaintiff claims was legal mail involving Plaintiff's

-2-

complaints against other officers. In addition, Plaintiff claims that Defendant Hawkins unreasonably searched his property, in violation of the Fourth and Fourteenth Amendments, and issued a contraband removal form for a wide range of Plaintiff's property, including an index to and pages from Plaintiff's collection of 334 legal cases, his grievances and Plaintiff's collection of sexually explicit books, and his collections of Penthouse, Pictorial and Playboy magazines. Plaintiff also alleges that Hawkins ripped 25 file folders; threw out a poster; broke Plaintiff's sewing kits; tore the elastic binding of Plaintiff's legal case folder; ripped off one of Plaintiff's ear buds; broke the cable input on Plaintiff's television; took all the protective packaging from Plaintiff's other earbuds and headphone extension cords; threw away all of Plaintiff's kites from the folders on his desk; and threw away some of Plaintiff's legal briefs and notes, clothes, fragrance samples, and magazine subscription addresses.

Plaintiff contends that, because the state has a judgment against Plaintiff for the costs of his incarceration, he essentially is renting his space in the prison and has a Fifth Amendment right not to have his rented space searched without a warrant. He also alleges that Hawkins' theft and destruction of his property violated MDOC policy and his rights to due process, as well as his First Amendment right to possess sexually explicit materials. In addition, Plaintiff alleges that Hawkins acted in retaliation for Plaintiff's federal lawsuit against other MDOC employees, in violation of the First Amendment. Further, Plaintiff complains that Hawkins violated the Equal Protection Clause by treating Plaintiff differently than other prisoners in the general population who are transferred, but who are allowed to pack their own property.

Plaintiff seeks declaratory and injunctive relief, together with nominal, compensatory and punitive damages.

II.   Immunity

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

III.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more

than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

    To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Supervisory Liability

Plaintiff fails to make specific factual allegations against Defendant Washington, except to suggest that she is responsible for the actions of her subordinates or failed to adequately respond to Plaintiff's grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Washington engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against her.

### B. Due Process – Violation of Transfer Policy

Plaintiff's sole allegation against Defendant O'Neal is that O'Neal ordered him to be handcuffed for immediate transfer without allowing Plaintiff time to pack his belongings, which Plaintiff contends violates MDOC policy. Plaintiff alleges that O'Neal's action violated his rights to due process and equal protection.

Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-2347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). In addition, the Court has recognized that the ability to transfer prisoners is essential to prison management, and that requiring hearings for such transfers would interfere impermissibly with prison administration. *Meachum*, 427 F.3d at 228-29; *Olim*, 461 U.S. at 238; *Montanye v. Haymes*, 427 U.S. 236 (1976). "Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all." *Meachum*, 427 U.S. at 228.

Plaintiff also alleges that Defendant O'Neal deprived him of equal protection by not following the policy. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is

essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Plaintiff's allegations on this point are almost nonexistent. Plaintiff merely states that O'Neal treated him differently and that unspecified other prisoners who were allowed to pack up their own belongings, but he does not allege facts suggesting that O'Neal intentionally treated him differently or that prisoners always were allowed such time. He relies entirely on MICH. DEP'T OF CORR., Policy Directive 04.07.112 ¶ U, which states in relevant part that "[w]herever possible, prisoners should be permitted to pack their own property . . . ." *Id.* The remainder of the policy, however, expressly provides for those situations in which time does not permit prisoners to pack their own property. As a result, it is apparent from the policy itself that not all prisoners always are able to pack their own property. Plaintiff does not allege that O'Neal intentionally delayed notifying him of the transfer or intentionally prevented Plaintiff from packing his property. And he alleges no facts from which such intent could be inferred. Under these circumstances, his equal protection claim is conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

### C. Due Process – Property

Plaintiff next alleges that Defendant Hawkins violated his right to due process by removing, damaging or destroying some of his property. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real,

is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim against Defendant Hawkins will be dismissed.

### D. Search and Seizure

Plaintiff contends that Defendant Hawkins violated his rights under the Fourth Amendment by illegally searching and seizing his prison property. He contends that, because he is subject to a judgment for restitution of the costs of his incarceration, he should be considered a tenant of the Michigan Department of Corrections, and any search of his cell or property is subject to the warrant requirement of the Fourth Amendment.

In *Hudson v. Palmer*, 468 U.S. 517 (1984), the Supreme Court considered and rejected a Fourth Amendment claim similar to Plaintiff's. In that case, a prison official searched a prisoner's cell and destroyed some of his legal papers in the process. *Id.* at 519, 535. The prisoner claimed that the prison official's conduct constituted an unreasonable search and seizure of his property, in violation of the Fourth Amendment. *Id.* at 530. The Court disagreed.

First, the Court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, . . . chief among which is internal security." *Id.* at 523–24 (internal citation omitted). The Court then determined that the official's search of the prisoner's cell did not violate the Fourth Amendment because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526. According to the Court, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527–28.

For similar reasons, the Court held that "the Fourth Amendment does not protect against seizures in a prison cell [.]" *Id.* at 528 n.8. According to the Court, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.*

Applying *Hudson* to Plaintiff's case, the Fourth Amendment did not prohibit Defendants from searching his cell and personal property. Moreover, it did not prevent them from confiscating items in Plaintiff's cell because they appeared to be contraband. Therefore, Plaintiff does not state a Fourth Amendment claim.

### E. Remaining Claims

The Court concludes that Plaintiff has alleged sufficient facts to warrant service of Plaintiff's remaining claims against Defendant Hawkins.

### IV. Motion to Appoint Counsel

Plaintiff also has filed a motion to appoint counsel (ECF No. 4) with a supporting brief. Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur- Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606.

Plaintiff argues that the issues raised in his complaint are complex, that he requires discovery that will be difficult to accomplish, that he is entitled to only four hours of library time each week, and that the facility has only one typewriter for 1,400 inmates. In light of the disposition of the majority of Plaintiff's claims, the matters in issue no longer are complex and the need for discovery is limited. Moreover, Plaintiff is not required to type his filings. Indeed, the motion before the Court was handwritten. As a consequence, the limitations on typewriter access do not warrant appointment of counsel. Further, it is apparent from both the complaint and motions that Plaintiff has been able to obtain sufficient access to legal materials at this juncture. Having carefully considered the relevant factors, the Court concludes that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel (ECF No. 4.) therefore will be denied.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Michigan Department of Corrections, Washington and O'Neal will be dismissed on grounds of immunity or failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court also will dismiss Plaintiff's due process and illegal search claims against Defendant Hawkins. The Court will serve the remaining claims in the complaint against Defendant Hawkins.

An Order consistent with this Opinion will be entered.

Dated:  November 13, 2015                          /s/ Janet T. Neff
                                                                    Janet T. Neff
                                                                    United States District Judge