UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BRYAN CHRISTOPHER BROWN,

            Plaintiff,                    Case No. 1:15-cv-1091

v.                                        Honorable Janet T. Neff

MICHIGAN DEPARTMENT
OF CORRECTIONS et al.,

            Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. On November 13, 2015, following initial review of the complaint under 28 U.S.C. §§ 1915(e)(2), 1915A and 42 U.S.C. § 1997e(c), the Court issued an opinion and order partially dismissing certain claims and Defendants on grounds of immunity and failure to state a claim and ordering service of the remainder of the complaint Defendant Hawkins.  Plaintiff has been granted leave to file an amended complaint.  The matter presently is before the Court on three motions or other requests for relief filed by Plaintiff in light of the new allegations in his amended complaint.  Specifically, Plaintiff has filed the following motions:  (1) a Motion to Alter Judgment (ECF No. 15); (2) a "Brief in Opposition to the Motion to Dismiss" (ECF No. 17); and (3) a proposed Order to Show Cause why a preliminary injunction should not issue (ECF No. 19).  The Court also must conduct initial screening of the new allegations of Plaintiff's amended complaint, pursuant to  28 U.S.C. §§ 1915(e)(2), 1915A and 42 U.S.C. § 1997e(c).

I.  Motions Seeking Reconsideration

Plaintiff has filed two motions related to his dissatisfaction with the Court's November 13, 2015 opinion and order partially dismissing and partially serving the complaint. He has filed a motion to alter judgment under Rule 59(e) of the Federal Rules of Civil Procedure, which the Court construes as a motion for reconsideration. He also has filed what he calls a "Brief in Opposition to the Motion to Dismiss," in which he also seeks reconsideration of the same opinion and order.

Under Rule 54(b) of the Federal Rules of Civil Procedure, a non-final order is subject to reconsideration at any time before entry of a final judgment. *See also ACLU v. McCreary Cnty.*, 607 F.3d 439, 450 (6th Cir. 2010). Western District of Michigan Local Civil Rule 7.4(a) provides that "motions for reconsideration which merely present the same issues ruled upon by the Court shall not be granted." Further, reconsideration is appropriate only when the movant "demonstrate[s] a palpable defect by which the Court and the parties have been misled . . . [and] that a different disposition must result from a correction thereof." *Id.*

Plaintiff alleges that, with the benefit of the new allegations in his amended complaint, the Court should reconsider the dismissal of Defendants Washington and O'Neal and the dismissal of Plaintiff's due process claims regarding the taking or destruction of his property. He also has raised allegations against a new Defendant, Mary Berghuis, the former Warden of the Earnest C. Brooks Correctional Facility. Finally, he has added additional causes of action against Defendant Berghuis. The Court will address the new claims in the context of reconsidering the prior partial dismissal.

### A.      Property Claims

Plaintiff alleges that he was deprived of his property when one of his duffel bags was lost or destroyed during transfer. Further, he argues that he had a liberty interest in MICH. DEP'T OF CORR., Policy Directive 04.07.112 20 ¶ U, which indicates that prisoners ordinarily should be permitted to pack their own property before transfer.

The Court reiterates its conclusion that Plaintiff's claims based on the loss or destruction of his property are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981). Moreover, to the extent that Plaintiff asserts that he had a liberty interest in prison policy governing the packing of his property, his argument depends on cases arising under *Hewitt v. Helms*, 427 U.S. 215 (1983). The *Hewitt* methodology was expressly overruled by *Sandin v. Conner*, 515 U.S. 472, 484 (1995), which set forth a new standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The inability to pack one's property is not such an atypical and significant hardship.

In sum, for reasons discussed in the Court's November 13, 2015 opinion and this opinion, the violation of prison policy is a state-law claim, not protected by the Due Process Clause. The Court has considered Plaintiff's remaining arguments respecting his due process claims concerning his property and finds no error in its prior determination.

### B. Defendant Washington

With respect to the dismissal of Defendant Washington, Court finds that Plaintiff's amended complaint makes few new allegations against her. Plaintiff alleges that Defendant Washington is liable for the ongoing enforcement of a prison policy that bans certain pornographic material.

Under MDOC Policy Directive 04.07.112, ¶ E(1), a prisoner's possession of publications is governed by MDOC Policy Directive 05.03.118, which addresses prisoner mail. *See* MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ E(1) (effective Dec. 12, 2013). Under MDOC policy, a prisoner may send and receive uncensored mail from any person or organization unless the mail violates policy or an administrative rule. MICH. DEP'T OF CORR., Policy Directive 05.03.118, ¶ D (effective Sept. 14, 2009). Mail cannot be prohibited solely because its content is "religious, philosophical, political, social, sexual, unpopular, or repugnant." *Id.* However, mail can be prohibited if it is a "threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with rehabilitation of the prisoner." *Id.* Certain types of incoming mail, which are listed in the policy, are deemed to pose these risks under all circumstances. For example, the list includes acts of sadism, masochism, bondage, bestiality, and sexual acts involving children. *Id.*, ¶ MM(5). The policy also prohibits photographs depicting actual or simulated sexual acts by one or more persons, including a publication sent directly from the publisher or a vendor authorized by the facility. *Id.*, ¶ MM(14). Plaintiff contends that the MDOC policy prohibiting pornography is unconstitutional under the First Amendment.

The Supreme Court considered a similar facial challenge to regulations of the Federal Bureau of Prisons regarding receipt of sexually explicit mail in *Thornburgh v. Abbott*, 490 U.S. 401

(1989). The regulations contained a non-exhaustive list of criteria, including "sexually explicit material which by its nature or content poses a threat to security, good order, or discipline of the institution, or facilitates criminal activity." *Id.* at 405 n.5. The following types of sexually explicit material could also be rejected: (1) homosexual (of the same sex as the institution population), (2) sado-masochistic, (3) bestiality, and (4) involving children. *Id.* at 405 n.6.

In evaluating the challenge, the Supreme Court recognized that, because "the judiciary is ill-equipped to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Thornburgh,* 490 U.S. at 407 (quotation omitted). Further emphasizing this deference, the Supreme Court stated:

> We deal here with incoming publications, material requested by an individual inmate but targeted to a general audience. Once in the prison, material of this kind reasonably may be expected to circulate among prisoners, with the concomitant potential for coordinated disruptive conduct. Furthermore, prisoners may observe particular material in the possession of a fellow prisoner, draw inferences about their fellow's beliefs, sexual orientation, or gang affiliations from that material, and cause disorder by acting accordingly. As the Deputy Solicitor General noted at oral argument: "The problem is not . . . in the individual reading the material in most cases. The problem is in the material getting into the prison." In the volatile prison environment, it is essential that prison officials be given broad discretion to prevent such disorder.

*Id.* at 412-13 (citations omitted).

In light of the deference owed to prison officials, the *Thornburgh* Court held that limits on incoming prisoner publications must be analyzed under the standard applied by the Court in *Turner v. Safley* for determining the constitutionality of limits on incoming prison personal mail. *Thornburgh*, 490 U.S. at 409 (citing *Turner*, 482 U.S. at 78, 89 (1987); That standard is, whether the regulations are "reasonably related to legitimate penological interests." *Id.* (Internal quotation

marks omitted). The *Turner* Court identified four factors to be considered in reaching this determination: (1) whether there is a valid rational connection between the regulation and the legitimate governmental interest which it allegedly furthers; (2) whether there are alternative means by which the inmate may exercise the right impinged; (3) what impact the accommodation of the inmate's constitutional right will have on guards, other inmates, or the allocation of prison resources generally; and (4) the existence or absence of ready alternatives to the regulation in question. *Thornburgh*, 490 U.S. at 414-18 (citing *Turner*, 482 U.S. at 88-91). Applying these factors, the Court found that the regulations were reasonably related to legitimate penological interests and did not violate the First Amendment. *Thornburgh*, 490 U.S. at 413.

In unpublished decisions, the Sixth Circuit has addressed challenges to previous versions of MDOC Policy Directive 05.03.118. *See Ward v. Jones*, No. 02-1924, 2003 WL 1795736, at *1 (6th Cir. Mar. 31, 2003) (analyzing MDOC Policy Directive 05.03.118, ¶ EE(14) (effective Jan. 1, 2001), *amended* ¶ DD(14) (effective Mar. 12, 2001) prohibiting "photographs depicting actual or simulated sexual acts"). Applying *Turner*, the *Ward* Court concluded that the 2001 policy was reasonably related to the legitimate penological interest of prison security. *See Ward*, 2003 WL 1795736, at *2. The Court further noted that Michigan prisoners may still receive less explicit photographs of an arguably sexual nature. *Id.* In *Rogers v. Martin*, 84 F. App'x 577, 579 (6th Cir. 2003), the Sixth Circuit also upheld a prior version of MDOC Policy Directive 05.03.118, which prohibited the introduction of magazines containing actual or simulated sexual acts:

> [T]he MDOC policy did not violate the First Amendment because:
> (1) it was rationally related to the goal of a safer prison environment;
> (2) prisoners had alternative means of acquiring sexually explicit materials such as written descriptions of sex acts and nude

>photographs that do not depict sexual acts; (3) accommodating the prisoners' right to receive sexually explicit materials in the form of photographs of sexual acts could adversely affect prison guards, other inmates, and the allocation of prison resources by creating a sexually charged atmosphere; and (4) redacting every publication containing photographs that violate the rule is not a ready alternative to disposing of the offending magazines because of the administrative burden of case-by-case redaction. *See Turner v. Safley*, 482 U.S. 78, 90-91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Although Rogers argued to the contrary, the defendants were not required to submit evidence that the banned materials actually caused problems in the past or are likely to cause problems in the future, as long as it is plausible that they believed the policy would further a legitimate objective. *See, e.g., Mauro v. Arpaio*, 188 F.3d 1054, 1060 (9th Cir. 1999).

*Rogers*, 84 F. App'x at 579

District courts have also upheld MDOC Policy Directive 05.03.118. *See Richards v. Snyder*, No. 1:14-cv-84, 2015 WL 365836, at *9-11 (W.D. Mich. June 12, 2015); *Johnson v. Deeren*, No. 2:12-cv-205, 2012 WL 6019365, at **11-12 (W.D. Mich. Dec. 3, 2012) (finding that the restriction of Penthouse for including "sexual simulated acts" in MDOC Policy Directive 05.03.118, ¶ MM(14) (effective Sept. 14, 2009) was clearly related to a legitimate penological interest); *see also Houston v. Caruso,* No. 1:07-cv-960, 2008 WL 5235869, at *7 (W.D. Mich. Nov. 24, 2008) (upholding MDOC Policy Directive 05.03.118, ¶ HH(15) (effective Jan. 1, 2006), which prohibited photographs depicting actual or simulated sexual acts by one or more persons.)

Addressing the first prong of *Turner*, the Sixth Circuit held that a prior version of MDOC Policy Directive 05.03.118, which prohibited publications that contain "actual or simulated sexual acts" was rationally related to the penological goal of a safe prison environment. *See Rogers*, 84 F. App'x at 579. Likewise, the present version of MDOC Policy Directive 05.03.118, ¶ MM(14)

(effective Sept. 14, 2009), which similarly bans photographs that contain "actual or simulated sexual acts" is rationally related to the penological interest of prison safety.

The second prong of the *Turner* test is whether the prisoners have alternative means of expression. *See Turner,* 482 U.S. at 92. The Sixth Circuit has held that prior versions of MDOC Policy Directive 05.03.118 do not preclude written descriptions of sexual acts, *Rogers*, 84 F. App'x at 579, or less explicit photographs of arguably a sexual nature, *Ward*, 64 F. App'x at 424. Similarly under the current MDOC Policy Directive 05.03.118, Plaintiff may view nude photographs that do not involve sexual acts and receive letters or books describing sexual acts as an alternative means of expression under *Turner,* 482 U.S. at 92.

In addressing the third prong of the *Turner* test, the *Ward* court held that accommodating depictions of sexual acts would have a significant impact on third parties such as prison guards and inmates. *See Ward*, 64 F. App'x at 424. The *Ward* court determined that "the disputed photographs contribute to a hostile work environment for staff, a sexually charged and hostile environment for prisoners, offensive conduct and hostile acts by prisoners and violations of visiting room policy." *Id*. "Where, . . . [] the right in question 'can be exercised only at the cost of significantly less liberty and safety for everyone else, guards and other prisoners alike,'. . . [] the courts should defer to the 'informed discretion of corrections officials . . . .'" *Thornburgh*, 490 U.S. at 418. Because the impact on third parties is significant, the third factor weighs heavily in favor of finding the prison policy valid.

The last *Turner* prong requires Plaintiff to prove that there exists alternatives to the regulation in question. Plaintiff has not alleged any alternative means. Moreover, as the *Ward* court recognized, redacting every publication containing photographs that violate the rule is not a

ready alternative because of the administrative burden of a case-by-case redaction. *Ward*, 84 F. App'x at 579.

In summary, all four *Turner* factors weigh in favor of a finding that MDOC Policy Directive 05.03.118 is reasonably related to the legitimate penological interest of safety. Accordingly, Plaintiff's amended complaint fails to state a First Amendment claim against Defendant Washington based on the allegedly unconstitutional policy governing pornography.

To the extent that Plaintiff intends to allege that the deprivation of his pornographic materials violated the Eighth Amendment, he also fails to state a claim. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

The mere fact that Plaintiff has been deprived of some of his sexually explicit photographs fails to rise to the level of an Eighth Amendment violation. The lack of pornographic

material in the prison does not create a condition "intolerable for prison confinement." *Richards*, 2015 WL 3658836, at *11 (citing *Rhodes*, 452 U.S. at 348-49). The Constitution "does not mandate comfortable prisons." *Id.* The lack of pornographic material is simply an unpleasant experience, which is not barred by the Eighth Amendment. *Id.* (citing *Ivey*, 832 F.2d at 954).

In its November 13, 2015 opinion and order, the Court rejected Plaintiff's claims that the taking of his pornographic materials violated the Due Process Clause, the Fifth Amendment, and the Ex Post Facto Clause. The amended complaint does not alter that analysis. For all these reasons, the Court will not reconsider the dismissal of Defendant Washington.

### C. Defendant O'Neal

Plaintiff next alleges that his amended complaint warrants reconsideration of the dismissal of Defendant O'Neal. To the extent that Plaintiff alleges that he had a due process interest in packing his personal property before transfer, the claim is meritless for the reasons discussed in the Court's November 13, 2015 opinion. To the extent that Plaintiff reiterates his argument that he was deprived of his right to equal protection by not being allowed to pack his own property, the Court finds no error in its prior determination. Plaintiff's amended complaint fails entirely to allege facts that tend to show that Defendant O'Neal intentionally treated Plaintiff differently that he treated other prisoners who were similarly situated in all other respects.[1]

### D. Defendant Berghuis

In his amended complaint, Plaintiff alleges that Warden Mary Berghuis (Defendant Berghuis) violated his rights to due process and equal protection by failing to inform the guards that

---

[1] Plaintiff argues that he also has stated a disparate-impact claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., and that Defendant O'Neal's conduct violated the Seventh Amendment. Title VII is addressed to employment practices and is wholly inapplicable to this proceeding. Further, the Seventh Amendment provides for a jury trial in certain civil cases; it does not provide any independent basis for relief in the instant case.

Plaintiff was being transferred in the morning. He also alleges that Defendant Berghuis had him transferred in retaliation for exercising his First Amendment rights to file grievances and petition government.

While Plaintiff makes a conclusory allegation that Defendant Berghuis violated his right to equal protection by intentionally treated him differently than others, he alleges no facts that would show that Berghuis acted intentionally to treat him differently or that he was treated differently than other prisoners who were similarly situated in all relevant respects. As the Supreme Court has indicated, to state a claim, a complaint must contain more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)). Here, Plaintiff alleges no facts that would support an inference that Defendant Berghuis violated Plaintiff's right to equal protection when she authorized his transfer.

Plaintiff next suggests that Defendant Berghuis deprived him of due process when she transferred him to a different prison without notice and an opportunity to be heard. The Supreme Court repeatedly has held that a prisoner has no due process right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (holding that prisoner had no constitutional right to be held in a particular prison or security classification); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same as *Harris*); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement). Because Plaintiff had no right to be housed at any particular facility, his transfer did not violate the Due Process Clause.

Moreover, to the extent that Plaintiff alleges that Defendant Berghuis is responsible for the actions of her subordinates, he fails to state a claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.

*Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff next alleges that Defendant Berghuis violated his First Amendment rights by transferring him to another prison in retaliation for his protected First Amendment conduct. He suggests that Defendant Berghuis transferred him to a different prison because he was assisting other prisoners to file grievances about an incident that occurred on September 5, 2015, when Trinity Foods served rotten chicken salad.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well established that "an inmate does not have an independent right to help other prisoners with their legal claims." *Thaddeus-X*, 175 F.3d at 395 (citing *Gibbs v. Hopkins*, 10 F.3d

373, 378 (6th Cir. 1993)). Instead, a "'jailhouse lawyer's right to assist another prisoner is wholly derivative of that prisoner's right of access to the courts; prison officials may prohibit or limit jailhouse lawyering unless doing so interferes with an inmate's ability to present his grievances to a court." *Id.* To show a derivative right, Plaintiff is required to allege facts that would establish that the inmates he assisted needed his help to ensure access to the courts. T*haddeus–X*, 175 F.3d at 395; *Gibbs*, 10 F.3d at 379.

Plaintiff wholly fails to allege that, absent Plaintiff's assistance, any prisoner would have been unable to pursue legal redress of his grievances. He also fails to allege that he had a legal-writer agreement with any of the prisoners he purported to represent. Instead, Plaintiff alleges that he undertook to facilitate and coordinate the filing of grievances by twenty or more prisoners, all objecting to the same incident. Such an allegation falls outside of the protected conduct defined by *Thaddeus-X. Id.*; *see also Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003).

Moreover, Plaintiff cannot demonstrate that his transfer amounted to adverse action. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment

rights") (internal quotation marks omitted). If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Siggers-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee*, No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007). Similarly, the Sixth Circuit has held that a transfer for the purpose of segregation or to an area of the prison used to house mentally disturbed inmates could be sufficiently adverse. *See Thaddeus-X*, 175 F.3d at 398; *see also Hill*, 630 F.3d at 468.

Although Plaintiff contends that the transfer threw him into a depressive spiral, his subjective reaction did not render the transfer objectively adverse. Transfers to the general population of another prison are not typically an adverse action. *See Smith*, 78 F. App'x at 543; *see also Hill*, 630 F.3d at 473; *Thaddeus-X*, 175 F.3d at 398. Plaintiff is a Security Level IV prisoner who was in the general population at a facility with Level I, II, and IV prisoners, and he was transferred to the general population of a prison with Level II and IV prisoners. The mere fact that Plaintiff became suicidal around the time of his transfer may not fairly be deemed the objective result of a prison transfer. Plaintiff therefore fails to allege facts supporting either of the first two prongs of his retaliation claim.

In sum, the allegations against Defendant Berghuis in Plaintiff's amended complaint fail to state a claim. Defendant Berghuis therefore will be dismissed as a party Defendant.

### E. Remaining Allegations

The Court has reviewed Plaintiff's remaining allegations and finds no error in the Court's prior opinion partially dismissing and partially serving the complaint. It therefore denies Plaintiff's motions seeking reconsideration (ECF Nos. 15, 17) in all respects and dismisses Plaintiff's amended complaint against Defendant Berghuis.

### II. Motion for Preliminary Injunction

Plaintiff seeks a preliminary injunction for the return of his property. The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal*, 467 F.3d at 1009. Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3, (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v.*

*Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. It is not at all clear from Plaintiff's *pro se* complaint or subsequent filings that Plaintiff has a substantial likelihood of success on his Eighth Amendment claim or Equal Protection claim. Although the Court makes no final determination on this issue, it appears at this preliminary stage that Plaintiff has not made a substantial showing of a violation of any of his constitutional rights. Second, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578. Since filing this motion, the case has proceeded without incident. There is no evidence that Defendants have engaged in any of the activities from which Plaintiff seeks to restrain them. Plaintiff has not set forth specific facts showing an immediate, concrete and irreparable harm in the absence of an injunction.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. That showing has not been made here. Accordingly, Plaintiff's Motion for Preliminary Relief will be denied.

      III.    <u>Conclusion</u>

For the foregoing reasons, the Court will deny Plaintiff's pending motions (ECF Nos. 15, 17, 19). The Court also will dismiss Defendant Berghuis. An Order consistent with this Opinion shall be issued.


Dated: <u>  February 17, 2016          </u>         <u> /s/ Janet T. Neff                    </u>
                                                                              Janet T. Neff
                                                                              United States District Judge